## ROBERTS v. J. I. ROBERTS DRILLING CO. et al.
### No. 5903.

Court of Appeal of Louisiana.
Second Circuit.

March 31, 1939.

Cawthorn, Golsan & Tooke, of Mansfield, for appellant.

Blanchard, Goldstein, Walker & O'Quin, of Shreveport, for appellees.

DREW, Judge.

This is a compensation suit filed by Mrs. Omega Roberts, widow of J. D. Roberts, deceased, in her own stead and on behalf of her minor son, Upton Knight Roberts, issue of her marriage with J. D. Roberts.

The defendants are the J. I. Roberts Drilling Company, the employer of J. D. Roberts, and its compensation insurer, the Fidelity & Casualty Company of New York.

For a cause of action, plaintiff alleged that on June 19, 1937, her deceased husband was working for the defendant Drilling Company assisting in drilling a well in search of oil in the Sligo Field, Bossier Parish, Louisiana, and while working, suffered heat exhaustion through becoming accidentally and extremely overheated; that on the next day, July 20th, pneumonia developed and he died approximately two weeks later; that the heat exhaustion was either the direct cause of his death or a contributing cause. She prayed for judgment in accordance with the provisions of Act No. 20 of 1914, as amended.

Defendants denied the material allegations of the petition insofar as same alleges an accident and injury. They admit that if the deceased did have heat exhaustion, and that caused pneumonia from which he died, plaintiff is entitled to compensation as prayed for.

The lower court rejected plaintiff's demands and she is prosecuting this appeal.

▪ The case involves only questions of fact. For plaintiff to recover she must first establish as a fact that the decedent suffered from heat exhaustion on July 19, 1937, while at work for the defendant Drilling Company. We are of the opinion this fact has not been proved.

Decedent was firing a boiler and engaged in painting a pump and water line on the morning of July 19th. About 1 o'clock when he was called upon to assist the crew in going back into the hole, he informed the driller that he was sick and unable to

do this heavy work. He said he was suffering with dyspepsia and had taken some soda-water to relieve him. Decedent continued to perform his duties of firing the boiler until quitting time. However, before quitting time, he complained of having fever. After 4 o'clock P. M., he rode to Shreveport with some of his fellow workmen and visited a physician's office. He told the doctor he was sick and thought he had gotten over-heated. The fever which was raging in his body and head no doubt caused him to think he had become overheated. Some medicine was prescribed for decedent, whereupon he went home and to bed. His temperature was high all night, and the next day it was discovered that lobar pneumonia had set up, from which he died some two weeks later.

The doctor testified that decedent's general condition at the time he came to his office on July 19th would be consistent with overheating, but that he was not positive that was the cause of his condition. The doctor thought decedent had a malarial condition and gave him medicine for malaria. There is no other testimony to show that decedent had heat exhaustion or had become overheated. He did not claim or tell his foreman or any of his fellow workmen that he was overheated. To the contrary, he told them he was suffering with dyspepsia.

The medical testimony shows there are several degrees of overheating. The effect of heat exhaustion is to cause one to perspire greatly, to become clammy and cold, and generally a sub-normal temperature exists. Heat prostration invariably causes one to fall out and become unconscious. A light form of heat exhaustion causes severe cramps in the legs and arms, and other muscular parts of the body. A sun stroke causes very high fever at once, ranging from 106 to 109 degrees.

Decedent did not suffer any of the described forms of overheating. He had fever before he left the job and had it when in the doctor's office between 4 and 5 o'clock that afternoon. He continued to have it until it was discovered next day that he had pneumonia. It is evident to our mind that decedent was suffering with pneumonia in the period of incubation while on the job on July 19th, and the fact that he thought he was suffering from dyspepsia is a strong evidence of that fact. It is not uncommon for one in the early stages of pneumonia to think he is suffering with indigestion, dyspepsia, etc. The incubating period lasts from 24 to 48 hours generally. Not any of the fellow workmen with decedent noticed or saw anything to indicate that he was overheated. It is unreasonable to suppose that he could become overheated in any of the forms above described without his condition becoming apparent to his foreman and fellow workmen.

■ It is unnecessary to discuss the controversial question of whether or not heat exhaustion could be the direct or contributing cause of pneumonia. We are convinced that plaintiff has failed to prove that the decedent suffered heat exhaustion in any form on July 19, 1937, and therefore she is not entitled to recover.

The judgment of the lower court is affirmed with costs.